**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x
    :
**MICHAEL G. REGAN,**    :
    :
          **Plaintiff,**    :
    :
      -against-    :    **1:21-CV-03534 (ALC)**
    :
**KILOLO KIJAKAZI,**    :    <u>**OPINION AND ORDER**</u>
**ACTING COMMISSIONER OF SOCIAL**    :
**SECURITY,**    :
    :
          **Defendant.**    :
    :
-------------------------------------------------------- x
**ANDREW L. CARTER, JR., United States District Judge:**

        The plaintiff, Michael Gerard Regan, brings this action to reverse the final decision of the

Defendant, the Acting Commissioner of Social Security (the "Commissioner"), that Regan was

not entitled to Title XVI Supplemental Security Income benefits ("SSI") or Title II disability

insurance benefits ("DIB"). Both parties have cross-moved for judgment on the pleadings

pursuant to Fed. R. Civ. P. Rule 12(c). For the reasons set forth below, the Commissioner's

motion is **GRANTED** and Regan's motion is **DENIED**.

## BACKGROUND

**I.**    **Procedural Background**

        On November 27, 2018, Regan filed an application for SSI and DIB, alleging disability

as of June 10, 2015. (A.R. 109).[1] His application was denied on March 19, 2019, and again on

May 17, 2019, upon reconsideration. (A.R. Ex. 5A). Regan then filed a written request for a

hearing before an Administrative Law Judge ("ALJ"). Following the hearing on February 26,

2020, the ALJ issued a decision on March 17, 2020, denying Regan's claims. Regan requested

---

[1] "A.R." refers to the administrative record prepared by the Social Security Administration. (ECF No. 10).

review of the ALJ's decision by the Appeals Council. (A.R. 164-165). On February 16, 2021, the Appeals Council denied his request for review, rendering the ALJ's decision the final decision of the Commissioner of Social Security.  Regan filed this civil action on April 21, 2021, moving for judgment on the pleadings on January 19, 2022. (ECF No. 1; ECF No. 15). The Commissioner cross-moved for judgment on the pleadings on March 21, 2022. (ECF No. 18).

## II.   Factual Background

Regan was born on January 1, 1964. (A.R. 109). Regan graduated from Yonkers High School in 1982; he never completed any type of specialized job training or vocational school. (A.R. 262; 347). June 10, 2015 was the alleged onset of Regan's disability, and since then, he has not engaged in substantial gainful activity. While he was working at Liberty Lines Transit Inc. his yearly earnings between 2000 to 2014 ranged from $28,677.71 to $42,790.95. (A.R. 240). On September 15, 2014, he received a letter from his employer informing him that "the documents submitted by Mr. Regan are not sufficient to deem him to be disabled from work. In addition, he was scheduled to return to work on October 7, 2014 and has not returned. The Company has considered him to have abandoned his job and he will be removed from the rolls." (A.R. 310). According to Liberty Lines, in 2011 Regan took 23 sick days, 15 unexcused absences, 1 family sick day and 24 days of disability. In 2012 he took 14 sick days, 1 unexcused absence and 35 days on disability. In 2013 Regan had 28 sick days, 26 unexcused abscess and 21 days on disability. In 2014 Regan had 20 sick days, 83 unexcused absences and 25 days on disability. (A.R. 317). In February 2015 Regan briefly returned to work before resigning as an alternative to getting fired in June 2015. (A.R. 20).

### A.   Non-Medical Evidence

#### 1.   Disability Report

In a disability report compiled for his benefits applications, Regan reported that he is unmarried and lives alone. (A.R. 227-228). He is a United States citizen by birth and has resided in the United States since the alleged disability onset date. (A.R. 227). He lives alone, rent-free and does not have a current bank account. (A.R. 228). He is five foot six inches and weighs two hundred and twenty pounds. (A.R. 261). Regan states, "I resigned from my job because I could not handle the pressure from work" and also "because of my condition(s)." (A.R. 261). He is currently taking medication for high cholesterol, high blood pressure, diabetes, and depression. (A.R. 263).

### 2.       Claimant's Testimonial Evidence

At the hearing before the ALJ on February 26, 2020, Regan's attorney, Gabriel J. Hermann of Hermann Law Group, testified on his behalf (A.R. 32). In June 2015, Regan was let go from his position at Liberty Lines. He had been working in maintenance as a cleaner in the bus depot since 1983. Starting in 2011, Mr. Regan stopped going to work regularly and missed approximately two hundred days before his employer dismissed him for abandoning his job. Regan fought the dismissal and was able to be reinstated. It was made clear that he had to attend work regularly, but Regan's behavior "completely changed with regards to responsibilities, attendance, [and] the fact he essentially cashed out his retirement."

At the hearing, Mr. Regan testified that he finished high school, achieving a high school diploma. He worked for 32 years at Liberty Lines as a cleaner in the depot. His duties included shoveling snow, cleaning drains, collecting garbage, and picking up sludge. Regan stopped work in 2015. He stated that he could not continue to work anymore because he felt there was an increase in pressure and the work was getting harder for him to complete. He is unable to lift over twenty pounds. (A.R. 45). Regan describes frequently being short of breath, especially

when carrying something up the stairs and can only walk for five minutes before needing to rest. (A.R. 45). When sitting, he needs to stand after five to ten minutes. (A.R. 45). He has diabetes, depression, high blood pressure, high cholesterol, sleep apnea, for which he wears a CPAP mask when he sleeps, and he uses an inhaler once per day for his asthma (A.R. 42-43, 46). At the time of the hearing, Mr. Regan stated he does not use recreational drugs and had stopped drinking alcohol in 2011 (A.R. 43). His medical insurance is through Fidelis. According to Regan he experiences "trouble focusing' and "trouble getting up sometimes." He is prescribed fluoxetine, which he takes every day. He says it helps sometimes. He claims the doctors think he is bipolar or has TBI and has manic depression (A.R. 44). His living arrangements are unstable, either sleeping at a youth organizational club or at his sister's home.

### 3.    Vocational Expert's Testimonial Evidence

Cherie Plante, a certified rehabilitation counselor and career counselor, offered testimony at Mr. Regan's ALJ hearing via teleconference. (A.R. 38–39). Ms. Plante explained that Mr. Regan's occupation as a commercial or institutional cleaner had a "heavy exertional level" and the "SVP is 2." (A.R. 54). She opined a person of claimant's age, education, and work history with a residual functional capacity to perform the full range of work at the medium exertional level, with the exception of climbing ropes, ladders, or scaffolds, with no exposure to unprotected heights or hazardous machinery; and the ability to understand, remember and carry out simple, routine, repetitive work-related tasks could not perform Regan's past work history. Examples of jobs that could be performed in the national economy by such a person are a "dining room attendant" or "coffee maker." (A.R. 54-55). However, when the hypothetical included the additional caveat of a person who is off-task fifteen percent of the workday and

absent four or more times per month, Plante concluded that such a person could not sustain

claimant's past relevant work or any other work in the national economy. (A.R. 56).

B.    **Physical Health Medical Evidence**

The A.R. contains evidence from several sources including St. Joseph's Hospital, St.

Vincent's Hospital Westchester, Samaritan Village, Rockland Psychiatric Center, Albany

Medical Center and Osama Sayegh.

### 1.    Albany Medical Center

At nine years of age, Regan attended Albany Medical Center following a drowning

incident. (A.R. 265; 347). This event occurred in 1974. (A.R. 265).  Claimant alleges he was

treated for "loss of oxygen to brain" and this is the cause of his ongoing traumatic brain injury

for which he is seeking disability benefits. (A.R. 265.)

### 2.    St. Joseph's Hospital

Following a car accident resulting in a broken leg, Regan received emergency surgical

treatment at St. Joseph's in 1984. (A.R. 267). The surgery required an overnight stay, but Regan

does not provide information about how many nights he remained as an inpatient.

### 3.    Osama Sayegh

Osama Sayegh MD. is located on 69 S Broadway Yonkers, NY 10701. Regan began

treatment in 2010 and at the time of the disability report submission he had another appointment

scheduled for January 18th, 2019. (A.R. 264). Sayegh prescribed the following medications:

atorvastatin for high cholesterol, insulin, and metformin for diabetes and lisinopril for high blood

pressure. It should be noted that secondary sources mention that his employer, Liberty Lines,

mandated that Regan attend Villa Veritas for addiction treatment to continue his employment.

(A.R 347.)

### 4.    Rockland Psychiatric Center

The Claimant was in inpatient rehabilitation for continued cannabis use and gambling addiction from 2016 through 2017. He received treatment for alcohol addiction at Rockland Psychiatric Center counseling. (A.R. 266).

### 5.    Samaritan Village

Regan was an inpatient at Blaisdell for over forty days before he was transferred to Samaritan Village from March 2016 through November 2017 (Exhibit 1F p.8). In the Disability Application, Regan self-reports that he was treated for alcohol addiction with counseling and therapy. (A.R. 267).

### 6.    St. Vincent's Hospital

From November 18 to December 7, 2015, Mr. Regan received inpatient care at St. Vincent Hospital for increased depressive symptoms and suicidal ideations. Regan had self-referred to the E.R. and shared he felt like killing himself on the day prior to his admission. (A.R. 361). Other symptoms he described were "frequently overeating" and "intermittent crying spells." (A.R. 361). While under observation Regan was described as "alert and orientated" though he "appeared anxious and depressed." (A.R. 362). His discharge summary describes his substance abuse and financial problems in detail. (ECF Ex. No. 1F). He was unable to buy his medication due to financial difficulties, and he was frequently gambling at casinos (A.R. 364-366). Though refusing in-patient rehab, following his release he utilized outpatient services. (A.R. 268). In November 2017, Claimant attended an initial assessment with Carol Weinstein, M.D., at St. Vincent for outpatient treatment. (A.R. 365, 440). He explained his concerns about his homelessness and that his family was angry he had spent his retirement money (A.R. 366). Dr. Kate Deters began treating the Claimant in spring 2018 and continued through 2019. (A.R.

6

292).

### 7.     Sayegh And Kump Family Medical Practices

Claimant visited Sayegh and Kump Family Medical Practices ("S&KMP") on February 9, 2015, for an initial psychotherapy evaluation with Dr. Sayegh. (A.R. 699). On March 2, 2015, Dr. Sayegh diagnosed Claimant as suffering from multiple somatic symptoms such as diabetes, constipation, hyperlipidemia, hypertension, recurrent abdominal pain, and anxiety. (A.R. 700)

### 8.     SSA Consultative Examiner

On request of the state agency, Claimant attended a consultative psychiatric examination completed by Melissa Antiaris, PSY. D. on February 14, 2019. (A.R. 554). The Claimant denied any prior psychiatric hospitalizations but reported that he had been seeing a therapist at St. Vincent's Hospital. (A.R. 554). Regan reported diabetes, high blood pressure, high cholesterol, difficulty sleeping due to sleep apnea. Regan also stated he had been suffering from recurrent depression for the past four to five years although he denied any suicidal or homicidal ideation. Claimant complained about his short-term memory and concentration. He was also concerned about his living arrangements. The psychological consultant concluded his speech was fluent, he had no evidence of hallucinations, delusions or paranoia and his mood was euthymic. Antiaris considered his attention and concentration "intact" with the Claimant effectively demonstrating an ability to complete simple calculations. (A.R. 555). The examination found that Claimant's recent and remote memory skills were also "intact" with the ability to recall a list of objects immediately and after a delay. Regan's cognitive function was assessed to be average with "fair" insight and judgment. Antiaris concluded, "there are no limitations in the claimant's ability to use reason and judgment to make work-related decisions…to sustain concentration and perform a task at a consistent pace, or to sustain an ordinary routine and regular attendance at work."

(A.R. 556). Dr. Antiaris opined that the claimant's "difficulties are caused by lack of motivation." *Id.* Dr. Antiaris diagnosed Regan with unspecified depressive disorder with full sustained remission for his alcohol and cannabis use disorder and full remission for his gambling disorder.

### C.  The ALJ's Decision

In his decision, the ALJ evaluated Regan's claims for benefits pursuant to the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920. First, the ALJ found that Regan met the insured status requirements of the Social Security Act and had not engaged in substantial gainful activity since the alleged onset date, June 10, 2015. Second, the ALJ determined that the Claimant had the following severe impairments: diabetes mellitus with diabetic polyneuropathy, obstructive sleep apnea, generalized anxiety disorder, major depressive disorder, post-traumatic stress disorder (PTSD), and attention deficit hyperactivity disorder (ADHD). (A.R. 13). The ALJ recognized there was objective evidence in Regan's medical records of non-severe impairments, but such impairments did not significantly limit an individual's physical or mental ability to do basic work activities (20 CFR 404.1522 and 416.922; SSR 85-28). (A.R. 13). From Exhibits 1F and 14F the ALJ identified a treatment history for hypertension, hyperlipidemia, benign prostatic hyperplasia, vitamin D deficiency, fatty liver, and hypothyroidism (A.R. 13). These impairments were not considered severe as they were not at the level to significantly limit Regan's ability to perform basic work activities.

For Regan's mental impairments, considered singly and in combination with his other impairments, the ALJ found the severity did not meet the criteria set forth in 20 CFR Part 404, Subpart P, Appendix 1 Section 12.04, 12.06, 12.11, and 12.15.  (A.R. 15-16). Consideration of the record led the ALJ to conclude that Regan could understand, remember, and carry out simple,

routine, repetitive work-related tasks. The ALJ determined that Regan has the residual functional capacity to perform medium work defined in 20 CFR 404.1567(c) and 416.967(c). According to the ALJ's report the limitations to Regan's capabilities were the inability to avoid climb ropes, ladders or scaffolds, as well as the need to avoid exposure to unprotected heights or hazardous machinery.  (A.R. 22). For the period between June 10, 2015, and March 17, 2020–the date of alleged onset and the ALJ's decision date–the ALJ concluded Regan was not disabled under sections 216(i) and 223(d) of the Social Security Act. Consequently, Regan's November 27, 2018, application for disability insurance benefits and supplemental security income were both rejected.

## LEGAL STANDARDS

### I.    Standard of Review

A district court may review the Commissioner's determination under 42 U.S.C. § 405(g) and can set aside the final decision if there is no 'substantial evidence' supporting it or upon the application of an incorrect legal standard. *Talavera v. Astue,* 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence, as set forth in § 405(g), is "more than a mere scintilla" and requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F. 3d 117, 127 (2d Cir. 2008) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)).  The "substantial evidence" standard is even more deferential than the "clearly erroneous" standard. *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012). "The Court, however, will not defer to the Commissioner's determination if it is the product of legal error." *DiPalma v. Colvin*, 951 F. Supp. 2d 555, 566 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

II.     **Determining Disability**

A plaintiff has a disability if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A). The disability must be serious enough "that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Further, a claimant's subjective complaints about their symptoms are, alone, not enough to establish a disability. 20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 96–7p, 1996 WL 374186. These complaints must be corroborated by a medical condition that reasonably could be expected to result in the conditions that, considered with all other evidence, demonstrate that Claimant is disabled. Where subjective claims are not completely supported by the Administrative Record, the ALJ will consider the frequency and duration of the symptoms, precipitating and aggravating factors, the effect of medication, treatment, functional restrictions, and Claimant's daily activities. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

A district court can only reject facts determined by the ALJ "if a reasonable factfinder would have to conclude otherwise." *Ortiz v. Saul*, No. 19-cv-942, 2020 WL 1150213 (S.D.N.Y. Mar. 2020) (quoting *Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012)) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). Thus, the Court "may not 'substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review.'" *Briody v. Commissioner of Social Security*, No. 18-cv-7006, 2019 WL 4805563, at *7 (S.D.N.Y. Sept. 30, 2019) (alteration in original) (quoting Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991) (internal quotation marks and citation omitted)). The

same standard as motion to dismiss for failure to state a claim under Rule 12(b)(6) governs

Motions for judgment on the pleadings.

"The Commissioner of Social Security has promulgated regulations that set forth a five-

step sequential evaluation process to guide disability determinations." *Cichocki v. Astrue*, 729

F.3d 172, 174 n. 1 (2d Cir. 2013) (internal citation omitted). The Second Circuit describes this

process thus:

> (1) First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> (2) If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.
>
> (3) If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him *per se* disabled.
>
> (4) Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity[2] to perform his past work.
>
> (5) Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417–18 (2d Cir. 2013) (alterations omitted) (footnote added).

The Commissioner only has the burden to prove the fifth step, with the plaintiff having

the burden for the preceding steps. *Id.* "In the ordinary case, the Commissioner meets his burden

at the fifth step by resorting to the applicable medical vocational guidelines (the grids)." *Butts v.*

---

[2] "The Social Security regulations define residual functional capacity as the most the claimant can still do in a work setting despite the limitations imposed by his impairments. In assessing the residual functional capacity of a claimant with multiple impairments, the SSA considers all his medically determinable impairments including medically determinable impairments that are not severe." *Selian*, 708 F.3d at 418 (citing 20 C.F.R. § 404.1545) (internal citations, quotation marks, and alterations omitted).

*Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004), *amended in part on other grounds on reh'g*, 416

F.3d 101 (2d Cir. 2005) (quoting *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)).

## ANALYSIS

Claimant argues that the ALJ erred by: (1) not supporting the RFC determination with

substantial evidence, by failing to evaluate NP Deters' opinion under the Commissioner's new

regulations and (2) failing to include limitations consistent with those limitations that were not

rejected.

### I. The ALJ Properly Rejected NP Deters' Opinion' under the Commissioner's New Regulations.

Plaintiff contends that the ALJ "provided only a cursory rejection of the opinion without

any evaluation of the required factors." ECF No. 16 ("Compl.") at 9. Supportability, consistency,

relationship with the claimant, specialization and other factors are what must be considered when

evaluating opinion evidence for claims after March 27, 2017. 20 C.F.R. §§ 404.1527c(c),

416.920c(c). Using *Cuvas*, as precedent, Plaintiff argues that the ALJ's failure to "explain the

rationale concerning supportability and consistency is clear legal error, which warrants remand."

2021 WL 3633682 at *14; *Compl.* at 10.

Contrary to Plaintiff's assertion that certain exhibits were not sufficiently discussed, the

ALJ explicitly considered evidence contained in 1F and 10F and cited it when discussing

Plaintiff's treatment with NP Deters, LCSW Daly, and Dr. Khan. *See* A.R. 18-19. The ALJ

report states NP Deters' opinion was "not well supported by the treatment records and mental

status examinations at Exhibits 1F and 10F." (A.R. 22). The ALJ demonstrates consideration of

those exhibits several times at the outset of the decision. (*See* A.R. 13-16). Thus, by finding that

NP Deters' opinion conflicted with the evidence contained in exhibits 1F and 10F, the ALJ

implicitly compared the opinion with NP Deters' own treatment notes (supportability) and with

other evidence in the record, including Plaintiff's treatment with Dr. Khan and LCSW Daly

(consistency). *See Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-13 (2d Cir. 2010)

(noting that "although the ALJ might have been more specific in detailing the reasons for" his

conclusions, "other portions of the ALJ's detailed decision…demonstrate that substantial

evidence supports this part of the ALJ's determination"); *Andrea G. v. Comm'r of Soc. Sec.*,

No.5:20-CV-01253 (TWD), 2022 WL 204400, at *7 (N.D.N.Y. Jan. 24, 2022) ("Although the

ALJ did not cite specific inconsistencies in her analysis of Dr. Procopio's statement, the ALJ's

decision outlines the medical evidence in the record she relied on in making her conclusion.").

## II.  To the Extent the ALJ Accepted Any Limitations Proffered by NP Deters, He Properly Evaluated Them.

The ALJ did not find NP Deters' opinion "partially" or "somewhat" persuasive, rejecting

it in its entirety.  Tr. 22. Even if the ALJ only rejected the marked limitations presented by

Deters and accepted the moderate limitations NP Deters presented, the moderate notations in NP

Deters' opinion are consistent with the RFC for simple work. *See McMillian v. Comm'r of Soc.

Sec.*, No. 1:20-CV-7626 (KHP), 2022 WL 457400, at *5-7 (S.D.N.Y. Feb. 15, 2022) (noting that

moderate limitations in areas related to understanding, remembering, or applying information

and concentrating, persisting, or maintaining pace are accommodated by a limitation to simple,

routine work).

## CONCLUSION

Claimant's remaining arguments are without merit. Upon a thorough consideration of the

evidence, we find the Commissioner's final decision is supported by substantial evidence and

based upon application of correct legal standards.

For the reasons stated above, the Commissioner's motion for judgment on the pleadings is GRANTED, Claimant's motion for judgment on the pleadings is DENIED, and the ALJ's decision is AFFIRMED. The Clerk of the Court is respectfully directed to enter judgment and to close this case.

**SO ORDERED.**

**Dated:**      New York, New York
                September 30, 2022

**ANDREW L. CARTER, JR.**
**United States District Judge**